IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANNON BESS** | : | **CIVIL ACTION** |
| *Petitioner-pro se* | : | |
| | : | **NO. 16-0033** |
| **v.** | : | |
| | : | |
| **NANCY GIROUX,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          OCTOBER 31, 2017

# MEMORANDUM OPINION

**INTRODUCTION**

Petitioner Shannon Bess ("Petitioner" or "Bess"), a Pennsylvania state prisoner proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254, in which he asserted numerous claims of ineffectiveness of counsel and a purported due process violation premised on the state court's treatment of his PCRA[1] petition. [ECF 1]. In accordance with Title 28 U.S.C §636(b), Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, and Local Civil Rule 72.1.IV(c), the petition was randomly referred to United States Magistrate Judge Timothy R. Rice (the "Magistrate Judge") for a *Report and Recommendation* ("R&R"). [ECF 2]. On February 17, 2017, the Magistrate Judge issued an R&R, which recommended that the petition for a writ of *habeas corpus* be denied. [ECF 14]. After requesting and being granted an extension of time in which to do so, Petitioner filed objections to the R&R. [ECF 19]. This matter is, therefore, ripe for a *de novo* review and determination of the specific objections to the R&R.

---

[1] Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. §9541, *et seq.*

After conducting a thorough and independent review of the state court record and court filings, for the reasons stated herein, Petitioner's objections are overruled, the R&R is approved and adopted, and the petition for a writ of *habeas corpus* is denied.

**BACKGROUND**

The factual and procedural histories underlying Petitioner's request for federal *habeas* relief are aptly summarized in the R&R submitted by Magistrate Judge Rice and will not be repeated except for context and to aid this Court's analysis. With this caveat, on November 27, 2006, following a bench trial, Petitioner was found guilty of third-degree murder and firearms violations. *See Commonwealth v. Bess*, 2015 WL 7188368, at *2 (Pa. Super. Ct. May 22, 2015). The facts underlying Petitioner's conviction are summarized as follows:

> On the day of the shooting at around 11 a.m., Bess received numerous phone calls from Tanaya Guy, ("Guy"), the mother of his children. (N.T.11/27/06 at 109-110). Around noon, Bess drove to the intersection of 54th Street and Gainor Road. There, he interrupted an argument between Guy and her estranged husband, the victim Danzell Chandler, (*id.* at 41), held a handgun to Chandler's head and pulled the trigger, but Chandler was able to flee when the gun misfired. (*Id.* at 39-40). Bess slipped while trying to follow Chandler on foot, then pursued him by car, and shot him four times in the back. (*Id.* at 40).
>
> Philadelphia police arrived within three minutes of the shooting and spoke to Chandler, who provided his name and birthdate. (*Id.* at 7-8). Chandler identified Bess as his shooter, but refused to answer further questions. (*Id.* at 8-9). Chandler was transported to the hospital and died almost three weeks later without offering further statements. (*Id.* at 18).
>
> At trial, the Commonwealth called two Gainor Road residents and the victim's estranged wife as witnesses. (*Id.* at 38, 55, 68). The first Gainor Road neighbor testified that, just before noon, he had witnessed the victim and a female arguing, and then saw another male pull up in a four-door, American-made sedan. (*Id.* at 41). He saw the driver leave the vehicle with a gun and put it to the victim's temple, heard the gun misfire, and saw the victim run away and the perpetrator try to chase him, slip, and return to his car. (*Id.* at 39-40, 42-43). As the shooter drove after the victim, the witness heard someone yell "it's not worth it" at the shooter, who responded by shouting back that the victim had hit his baby's mother. (*Id.* at 53). The witness heard additional gunshots while he called police. (*Id.* at 40). Later that day, the witness gave a statement to police

describing the shooter as a five-foot five-or-six-inch, dark-complected African American man in his early twenties wearing dark jeans and a yellow Polo shirt. (*Id.* at 50). He was unable to identify the shooter in a photo array. (*Id.*).

The second Gainor Road witness testified she was inside her home and heard arguing in the street followed by several gunshots. (*Id.* at 56-57). When she looked out her front door, she saw the shooter pointing a firearm at the face-down victim while standing over him, and held eye contact with the shooter for "seconds." (*Id.* at 47). She testified the shooter wore a yellow or gold polo shirt with long denim shorts, and that the defendant "resemble[d]" the shooter, but she could not be "100 percent positive" they were the same man. (*Id.* at 58). The shooter did not respond when the witness offered help, but instead jogged back to his silver car and drove away. (*Id.* at 59). Three weeks after the shooting, the second witness reviewed a photo array and was unable to identify the shooter. (*Id.* at 64).

The victim's estranged wife, Guy, testified that she visited the police station at around 2 p.m. to report being beaten by Chandler that day, only to learn that he had just been shot. (*Id.* at 73-74). Although she claimed to have no memory of the shooting at the time of trial, she acknowledged telling police that she had fought with Chandler until Bess arrived and tried to shoot him, after which she argued with Bess to stop and ran away. (*Id.* at 77-78). The statement also identified Bess's car as a silver, four-door Regal; and described the injuries and bruises she sustained from Chandler that day. (*Id.* at 79-81). Telephone records showed she was in close contact with Bess between 11 a.m. and 1 p.m. on the day of the shooting. (*Id.* at 109).

[*See* ECF 14, pp. 1-3].

The procedural history of this matter is set forth in the R&R, and need not be repeated in detail, and will be summarized to the extent relevant to the analysis of Petitioner's objections.

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. §636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). Although

3

the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent the court deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed pursuant to 28 U.S.C. §2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id*. at 196. Thus, in accordance with §2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

In order to seek federal *habeas* relief, however, a petitioner must first exhaust the remedies available in state court. *See* 28 U.S.C. §2254(b)(1), ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . ."). To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In order for a claim to be exhausted, "'[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman*, 167 F. App'x 320, 322-23 (3d Cir. 2006) (quoting *Evans v. Court of Common Pleas, De. Cnty., Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992)).

A state prisoner must "fairly present" his federal claims to the state courts before seeking federal *habeas* relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004). The *habeas* petitioner bears the burden of proving exhaustion of all state remedies. *Boyd v. Waymart*, 579 F.3d 330, 367 (3d Cir. 2009).

If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

To show "cause," the petitioner "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.*; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of suitable "cause" include a showing that: (1) the factual or legal basis for a claim was not reasonably available; (2) some interference by state officials made compliance with the state procedural rule impracticable; or (3) the procedural default was the result of ineffective assistance of counsel. *Id*. at 488. To demonstrate "prejudice," a petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

5

trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Notably, here, though there was some question as to whether Petitioner fully exhausted and/or procedurally defaulted some of his claims, the Magistrate Judge addressed the merits of each of Petitioner's claims.

**DISCUSSION**

In his objections to the R&R, Petitioner asserts that the Magistrate Judge erroneously: (1) concluded that Petitioner did not have a constitutionally protected right to PCRA/collateral counsel; (2) applied *Martinez v. Ryan*, 566 U.S. 1 (2012); and (3) concluded that trial counsel was not ineffective. Petitioner's objections largely reiterate the same arguments presented to, and thoroughly considered and rejected by, the Magistrate Judge. Notwithstanding, each of the objections is addressed below.

In his first objection, Petitioner argues that the Magistrate Judge erroneously concluded that his claim challenging the effectiveness of his PCRA counsel is not cognizable in a *habeas* petition. For the same reasons set forth in the R&R, Petitioner's objection lacks merit. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (reaffirming that prisoners do not have a constitutional right to counsel when bringing collateral attacks upon their convictions); *see also* 28 U.S.C. §2254(i) (providing that "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief.").

Without any substantive argument, Petitioner next objects that the Magistrate Judge erroneously applied *Martinez*. This objection, too, requires little discussion. In the R&R, the Magistrate Judge cited to *Martinez* solely for the principle that "[t]here is no constitutional right to counsel during post-conviction proceedings." (*See* R&R at 8). As set forth above, this legal principle is correct since prisoners do not have a constitutional right to counsel when

bringing collateral challenges to their convictions. As such, Petitioner's objection is without merit and overruled.

Petitioner next objects generally to the Magistrate Judge's rejection of each of his claims for ineffectiveness of trial counsel. When addressing the merits of ineffective assistance of counsel claims on *habeas* review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id*. at 687. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

Petitioner contends that his trial counsel was ineffective for failing to properly prepare his case and present evidence to support an affirmative defense. Specifically, Petitioner argues that his trial counsel was ineffective for failing to present evidence showing that he shot the victim in defense of his children and their mother. The Superior Court found that Petitioner had failed to present any evidence to support his claim with respect to potential affirmative defenses, noting that the evidence at trial contradicted the affirmative defenses by showing that Petitioner had chased down the victim and shot him at close range. *See Commonwealth v.*

*Bess*, 2015 WL 7188368, at *1 (Pa. Super. Ct. May 22, 2015). The Magistrate Judge concluded, and this Court agrees, that the Superior Court's fact-finding was not unreasonable and that its decision was not contrary to nor an unreasonable application of the standard articulated in *Strickland*.

In addressing Petitioner's claims of ineffective assistance of counsel, the Superior Court (adopting the opinion of the PCRA court) applied the governing test for ineffective assistance of counsel claims announced in *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987). *See Bess*, 2015 WL 7188368, at *3. The Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test." *Rompilla v. Horn*, 355 F.3d 233, 250 (3d Cir. 2004); *see also Henderson v. DiGugliemo*, 138 F. App'x 463, 468 (3d Cir. 2005); *Werts*, 228 F.3d at 203 (recognizing that the *Pierce* test as materially identical to the *Strickland* test). Therefore, the PCRA Court's decision, which was affirmed by the Superior Court, is not "contrary to" the test established in *Strickland*. Thus, the dispositive question becomes whether the PCRA Court's decision reflects an unreasonable application of the *Strickland* test. To carry his burden, Petitioner must demonstrate that the state court's decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [*Strickland*]." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000).

In addressing Petitioner's claim that trial counsel provided ineffective assistance when failing to present evidence to support affirmative defenses, including the defense of others, the PCRA Court found as follows:

> a review of the evidence demonstrates that the defenses named by defendant had no application to his case. The facts show that after attempting to shoot the victim, defendant chased the victim and shot him several times at close range. Given the facts, it is clear that trial counsel did a masterful job of avoiding a verdict finding defendant guilty of first-degree murder.

8

*Bess*, 2015 WL 7188368, at *4.

The record and case law support these conclusions. In order to invoke defense of others, there must be evidence to show that: (1) Petitioner was not at fault in provoking or continuing the violence which resulted in the killing; (2) he reasonably believed that the person he was protecting was in danger of immediate death or serious bodily injury; (3) the force used was necessary to save the other from such danger; and (4) he had no ability to retreat or avoid the killing. *See Commonwealth v. Hornberger*, 74 A.3d 279, 285 (Pa. Super. Ct. 2013). As the Magistrate Judge and the PCRA Courts found, the evidence at trial belied most, if not all, of these elements.

Evidence at trial uniformly showed that the unarmed victim fled the site after Petitioner initially confronted him. Petitioner pursued him on foot and by car on a public street. (N.T. 11/27/06 at 39-43). Once close enough, Petitioner got out of his car, aimed his gun, and shot the victim in the back *four* times. (*Id.*). This evidence shows that Petitioner violated his duty to retreat, thereby precluding his reliance on the defense of others affirmative defense. *See Hornberger*, 74 A.3d at 285 (requiring defendant to prove that he did not violate any duty to retreat or to avoid the danger); *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. Ct. 2009) ("deadly force cannot be used where there is an avenue of retreat."). Because trial counsel cannot be deemed ineffective for failing to pursue a meritless claim, *see United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999), the PCRA Court's decision was not an unreasonable application of *Strickland*.

Petitioner next objects to the Magistrate Judge's conclusion that his trial counsel was not ineffective for failing to obtain and present a "forensic expert" in the "field of psychodynamics

to offer evidence as to the duress Petitioner was under." Petitioner appears to argue that such an expert would have supported a diminished capacity defense.

The diminished capacity defense seeks to negate the intent element of a charge of first-degree murder. *Commonwealth v. Taylor*, 876 A.2d 916, 926 (Pa. 2005). To establish a diminished capacity defense, a defendant must show that he was "overwhelmed to the point of losing his faculties and sensibilities." *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008) (citations omitted). "Diminished capacity is 'an extremely limited defense' that requires a defendant to establish through 'extensive psychiatric testimony [that he] suffered from one or more mental disorders which prevented him from formulating the specific intent to kill.'" *Saranchak v. Beard*, 616 F.3d 292, 308 (3d Cir. 2010) (quoting *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (Pa. 2003)). A successful diminished capacity defense, however, can reduce a first-degree murder conviction only to third-degree murder. *Id.* at 307 (citing *Commonwealth v. Taylor*, 876 A.2d 916, 926 (Pa. 2005)).

As concluded by the Magistrate Judge, the above-described evidence cited by the PCRA Court belies any notion that Petitioner lacked the intent to commit third-degree murder. Petitioner arrived at the scene with a loaded gun. (N.T. 11/27/06 at 39). Once there, he tried to shoot the victim in the head from point-blank range, but his gun jammed. (*Id.*). The victim ran away, and Petitioner pursued the victim on foot and then by car, and shot him in the back numerous times at close range. (*Id.* at 39-43). The PCRA Court's conclusion that this uncontradicted evidence refuted any affirmative defenses that might have been pursued by trial counsel was more than reasonable. *See Morales v. Vaughn*, 619 F. App'x 127, 131 (3d Cir. 2015) (affirming denial of ineffective assistance of counsel claim premised on diminished capacity where trial evidence overwhelmingly showed the defendant's intent to kill).

10

Moreover, because a successful diminished capacity defense by Petitioner could only have reduced the degree of his conviction to third-degree murder (the degree to which he was found guilty), he was not prejudiced by counsel's decision against pursuing the defense through an expert or otherwise. *Strickland*, 466 U.S. at 694. As such, this claim is without merit.

Petitioner next objects to the Magistrate Judge's rejection of his ineffective assistance of counsel claims premised on his waiver of his right to (1) a jury trial and (2) to testify on his own behalf. As the Magistrate Judge concluded, however, the record clearly establishes that Petitioner's waivers were both knowing and voluntary. As such, Petitioner cannot show that his trial counsel's performance in this regard was deficient.

A criminal defendant's rights to a jury trial and to testify on his own behalf are fundamental constitutional rights. *Rock v. Arkansas*, 483 U.S. 44, 51 (1987); *Duncan v. Louisiana,* 391 U.S. 145, 154 (1968). A defendant may waive these constitutional rights if the waiver is both knowing and voluntary. *Boykin v. Alabama,* 395 U.S. 238, 243 n.5 (1969); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938); *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995). The inquiry into whether a waiver is knowing and voluntary has two elements. *Moran v. Burbine,* 475 U.S. 412, 421 (1986) (citations omitted). That is, the waiver of the right must have been knowing and voluntary in that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to waive it. *Id.* The determination of whether there has been a knowing and intelligent waiver of a constitutional right depends upon the facts and circumstances of each particular case, including the background, experience and conduct of the accused. *Attica v. Frank,* 2001 WL 827455, at *9 (E.D.Pa. July 11, 2001) (citing *Johnson,* 304 U.S. at 464). "At a minimum, a defendant should

11

be informed that a jury is composed of 12 members of the community, he may participate in the selection of jurors, [and] the verdict of the jury must be unanimous . . . ." *Locke v. Dillman,* 915 F. Supp. 2d 670, 677 (E.D.Pa.2012) (quoting *United States v. Lilly,* 536 F.3d 190, 198 (3d Cir. 2008)). Notably, while an on-the-record colloquy "can be helpful to assure that a criminal defendant is properly advised of his right to be tried by a jury," "no such colloquy is required under . . . constitutional law." *United States v. Lilly,* 536 F.3d at 197 (citation omitted).

Here, the trial judge conducted an extensive colloquy regarding Petitioner's waiver of his right to a jury trial. (N.T. 11/27/06 at 32-33). The judge explained everything a jury trial would entail, and required Petitioner to confirm that he was waiving a jury trial of his own free will and had no complaints regarding trial counsel's performance. (*Id*. at 35). The judge also specifically explained that a jury of twelve would be selected from a pool of members of Petitioner's community, that he would participate in the jury selection, and that the verdict would have to be unanimous. (*Id*. at 33-34). The trial judge also advised Petitioner that, although he could receive advice from counsel, the decision whether to testify on his own behalf was up to him. (*Id*. at 112). The trial judge also inquired whether Petitioner had been threatened or promised anything in exchange for not testifying, and ensured that he was making the decision not to testify of his own free will. (*Id*. at 113).

Based on a review of the record, it is clear that Petitioner knowingly, intelligently, and voluntarily waived his right to a jury trial and his right to testify on his own behalf. As such, Petitioner cannot show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In addition, Petitioner has also failed to make any attempt to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To the contrary, in light of the overwhelming evidence cited by

the PCRA Court and discussed above, Petitioner cannot show that the outcome of the trial would have been different had Petitioner opted for a jury trial or to testify on his own behalf. Thus, having failed to establish both prongs of the *Strickland* test, Petitioner's claim is without merit.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation lack merit and are overruled. Consequently, the Report and Recommendation submitted is approved and adopted, and Petitioner's *pro se* petition for a writ of *habeas corpus* is denied. In addition, because reasonable jurists would not debate this Court's disposition of Petitioner's claims, a certificate of appealability is denied. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.